UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KB HOME JACKSONVILLE LLC,

          Plaintiff,

v.

CERTAIN UNDERWRITERS AT
LLOYDS, SUBSCRIBING TO POLICY
NUMBER CIBFL0002724, FIRST
SPECIALTY INSURANCE
CORPORATION; NORTH POINTE
INSURANCE COMPANY; OLD
DOMINION INSURANCE COMPANY,
and SOUTHERN-OWNERS
INSURANCE COMPANY,

          Defendants.

CASE NO.

## **COMPLAINT**
## **DECLARATORY RELIEF REQUESTED**

Plaintiff KB HOME Jacksonville LLC ("KB Home"), by and through its undersigned counsel, sues Defendants Certain Underwriters at Lloyds, London subscribing to policy number CIBFL0002724 ("Lloyds"), First Specialty Insurance Company ("First Specialty"); North Pointe Insurance Company ("North Pointe"); Old Dominion Insurance Company ("Old Dominion"); and Southern-Owners Insurance Company ("Southern-Owners") (collectively, the "Insurer Defendants") and alleges as follows:

## **NATURE OF THE ACTION**

1.     This is an action for breach of the Insurer Defendants' duty to defend KB Home as an Additional Insured under general liability insurance policies in

connection with a lawsuit filed by Villages of Bartram Springs Owners Association, Inc. (the "Association") against KB Home, styled as *Villages of Bartram Springs Owners Association, Inc. v. KB HOME Jacksonville LLC, et al.*, Duval County Circuit Court, Case No. 2019-CA-006828 (the "Villages of Bartram Springs Lawsuit"). KB Home also seeks a declaration of its rights to a defense as an Additional Insured under the policies issued by the Insurer Defendants.

2.     The Villages of Bartram Springs Lawsuit alleges property damage resulting from alleged construction defects due to work performed by KB Home's subcontractors, including, but not limited to, American Lathing of North Florida, Inc. ("American Lathing"); Archer Exteriors, Inc. ("Archer"); Construction Management Plus, Inc. ("CMP"); Pedel Painting, Inc. ("Pedel"); Get In Touch, Inc. dba S.A. Robinson Construction("Robinson"); and Turnkey Construction Specialists, Inc. ("Turnkey") (collectively, the "Subcontractors").

3.     Upon information and belief, each of the Subcontractors was contractually obligated to, and did purchase commercial general liability ("CGL") insurance policies from one or more of the Insurer Defendants as detailed in **Exhibit 1** hereto.

4.     Upon information and belief, each of the CGL policies identified in **Exhibit 1** provides coverage to KB Home as an Additional Insured and requires that the issuing Insurer Defendant defend KB Home against allegations of liability because of property damage resulting from the insured Subcontractor's work.

5.     KB Home tendered the Villages of Bartram Springs Lawsuit to each of the Insurer Defendants and demanded a defense.  However, each of the Insurer Defendants have failed and/or refused to provide a defense to KB Home.  As a result, KB Home has been forced to bear the costs of defending itself against the Association's claims, even though such costs are the obligation of the Insurer Defendants.

## THE PARTIES

6.     Plaintiff KB Home is a Delaware limited liability company authorized to do business in the State of Florida.  KB Home's sole member is KB Home Florida, LLC, a Delaware limited liability company.  KB Home Florida, LLC's sole member is KB Home, a corporation organized under the laws of Delaware with its principal place of business in Los Angeles, California.

7.     Upon information and belief, Defendant Lloyds is a foreign citizen, located in London, England.  Lloyds issued CGL policies to American Lathing, a company doing business in Florida, which policies provide coverage to KB Home as an Additional Insured.  On information and belief, Lloyds is licensed to and does carry on business as a surplus lines insurer in the State of Florida.

8.     Upon information and belief, Defendant First Specialty is a corporation organized under the laws of Missouri with its principal place of business in Jefferson City, Missouri.  First Specialty issued CGL policies to Archer, a company doing business in Florida, which policies provide coverage to KB Home

as an Additional Insured.  First Specialty is licensed to and does carry on business as a surplus lines insurer in the State of Florida.

9.      Upon information and belief, Defendant North Pointe is a corporation organized under the laws of Pennsylvania with its principal place of business in Sun Prairie, Wisconsin.  North Pointe issued CGL policies to Robinson, a company doing business in Florida, which policies provide coverage to KB Home as an Additional Insured.  North Pointe is licensed to and does carry on business as a property and casualty insurer in the State of Florida.

10.     Upon information and belief, Defendant Old Dominion is a corporation organized under the laws of Florida with its principal place of business in Jacksonville, Florida.  Old Dominion issued CGL policies to American Lathing and Pedel, both companies doing business in Florida, which policies provide coverage to KB Home as an Additional Insured.  Old Dominion is licensed to and does carry on business as a property and casualty insurer in the State of Florida.

11.     Upon information and belief, Defendant Southern-Owners is a corporation organized under the laws of Michigan with its principal place of business in Lansing, Michigan.  Southern-Owners issued CGL policies to CMP, Robinson and Turnkey, companies doing business in Florida, which policies provide coverage to KB Home as an Additional Insured.  Southern-Owners is licensed to and does carry on business as a property and casualty insurer in the State of Florida.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because this matter involves a dispute between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13.     Venue is proper in this District and Division pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to this cause of action occurred in this District and Division; the properties that are the subject of the Association's claims are situated in Duval County, Florida, the Insurer Defendants conduct business in Duval County, Florida, and the Villages of Bartram Springs Lawsuit was filed in Duval County, Florida.

14.     KB Home has retained the law firms of Newmeyer & Dillion LLP and Cogburn Law Firm, P.A. and has agreed to pay their reasonable attorneys' fees to represent it in this action.  KB Home is entitled to recover its prevailing party attorneys' fees against the Insurer Defendants pursuant to Florida Statutes §§627.428 and/or 626.9373.

15.     All conditions precedent to bringing this action have been waived, excused, performed or have otherwise occurred.

## <u>FACTUAL ALLEGATIONS</u>

### I.    THE VILLAGES OF BARTRAM SPRINGS DEVELOPMENT

16.    KB Home was the general contractor for a residential multifamily development known as Villages of Bartram Springs located in Duval County, Florida ("Villages of Bartram Springs" or the "Project").

17.    On or about June 2, 2006, KB Home entered into a master subcontract with American Lathing, which governed American Lathing's obligations in performing work as a stucco subcontractor for the Project.

18.    On or about October 6, 2010, KB Home entered into a master subcontract with Archer, which governed Archer's obligations in performing work as a roofing subcontractor for a portion of the Project.

19.    On or about November 17, 2009, KB Home entered into a master subcontract with CMP, which governed CMP's obligations in performing work as a housewrap subcontractor for a portion of the Project.

20.    On or about February 16, 2007, KB Home entered into a master subcontract with Pedel, which governed Pedel's obligations in performing work as a painting subcontractor for a portion of the Project.

21.    On or about May 2, 2007, KB Home entered into a master subcontract with Robinson, which governed Robinson's obligations in performing work as a framing and housewrap subcontractor for a portion of the Project.

22.     On or about April 5, 2010, KB Home entered into a master subcontract with Turnkey, which governed Turnkey's obligations in performing work as a framing and housewrap subcontractor for a portion of the Project.

23.     Each of the master subcontracts incorporates the same insurance requirements.  KB Home required that each Subcontractor obtain CGL insurance naming KB Home—as well as its parents, subsidiaries, and affiliates—as Additional Insureds.  Specifically, KB Home required that each CGL policy include ISO Form CG 20 10 11 85 ("Additional Insured – Owners, Lessees or Contractors – (Form B)"), which provides Additional Insured status with respect to liability for property damage resulting from the Subcontractor's work on the Project, including property damage within the "ongoing operations" and "products-completed operations hazard."

## II.    THE INSURER DEFENDANTS' POLICIES

### A.    <u>The Lloyds Policy</u>

24.     Upon information and belief, American Lathing purchased at least one CGL policy from Lloyds providing ongoing and products-completed operations coverage for liability because of property damage resulting from American Lathing's work (the "Lloyds Policy").  The Lloyds Policy is listed in **Exhibit 1** and attached as **Exhibit 2**.  For each annual period, the Lloyds Policy provides $1 million in per occurrence limits and $2 million in general aggregate limits and $2 million for products-completed operations.

25.     The insuring agreements of the Lloyds Policy states, in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies.  We will have the right and the duty to defend the insured against any "suit" seeking those damages . . . .

26.   The Lloyds Policy defines "property damage" to include:

> a. Physical injury to tangible property, including all resulting loss of use of that property . . . . or
>
> b. Loss of use of tangible property that is not physically injured . . . .

27.   For coverage to be afforded, "property damage" must be caused by an "occurrence," which is defined under the Lloyds Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

28.   The Automatic Additional Insureds Endorsements in the Lloyds Policy states, in relevant part:

> The following provision is added to (SECTION II), Who Is An Insured.
>
> 5. Any entity you are required in a written contract to name as an insured, is an additional insured (hereinafter called Additional Insured). . . .

29.   KB Home's subcontract with American Lathing required that KB Home be named as an Additional Insured.

**B.     The First Specialty Policies**

30.   Upon information and belief, Archer purchased at least three CGL policies from First Specialty providing ongoing and products-completed operations coverage for liability because of property damage resulting from

Archer's work (the "First Specialty Policies"). The First Specialty Policies are listed in **Exhibit 1** and attached as **Exhibits 3 to 5**. For each annual period, the First Specialty Policies provide $1 million in per occurrence limits, $2 million in aggregate limits, and $2 million for aggregate products-completed operations.

31. The insuring agreement of the First Specialty Policies state, in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages . . . .

32. The First Specialty Policies define "property damage" to include:

> a. Physical injury to tangible property, including all resulting loss of use of that property . . . . or
> b. Loss of use of tangible property that is not physically injured . . . .

33. For coverage to be afforded, "property damage" must be caused by an "occurrence," which is defined under the First Specialty Policies as follows:

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. Faulty workmanship in "your work" is not an "occurrence" but "property damage" that is ancillary and accidental damage caused by faulty workmanship in "your work" is considered an "occurrence" if the following conditions are met:
>
> c. faulty workmanship in "your work" causes "property damage" to property other than "your work;" and
>
> d. such "property damage" was not expected or intended by you or the persons performing "your work."

34.    The Additional Insured – Owners, Lessees or Contractors – Completed Operations Endorsement in the First Specialty Policies state, in relevant part:

> Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for . . . "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

35.    The Schedule of the Additional Insured – Owners, Lessees or Contractors – Completed Operations Endorsement in the First Specialty Policies show:

> Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.

36.    KB Home's subcontract with Archer required that KB Home be named as an Additional Insured.

### C.    **The North Pointe Policies**

37.    Upon information and belief, Robinson purchased at least six CGL policies from North Pointe providing ongoing operations coverage for liability because of property damage resulting from Robinson's work (the "North Pointe Policies").   The North Pointe Policies are listed in **Exhibit 1** and attached as

**Exhibits 6 through 11**.  For each annual period, the North Pointe Policies provide $1 million in per occurrence limits, $2 million in aggregate limits, and $2 million for aggregate products-completed operations.

38.     The insuring agreements of the North Pointe Policies state, in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies.  We will have the right and the duty to defend the insured against any "suit" seeking those damages . . . .

39.     The North Pointe Policies define "property damage" to include:

> a.  Physical injury to tangible property, including all resulting loss of use of that property . . . . or

> b.  Loss of use of tangible property that is not physically injured . . . .

40.     For coverage to be afforded, "property damage" must be caused by an "occurrence," which is defined under the North Pointe Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

41.     The Automatic Additional Insureds Endorsements in the 2008 – 2009 and 2009-2010 North Pointe Policies state, in relevant part:

> The following provision is added to (SECTION II), Who Is An Insured.

> 5.  Any entity you are required in a written contract (hereinafter called Additional Insured) to name as an insured, is an additional insured . . .

42.     The Automatic Additional Insureds Endorsements in the 2010-2011, 2011-2012, 2012-2013, and 2013-2014 North Pointe Policies state, in relevant part:

> The following provision is added to (SECTION II), Who Is An Insured.
>
> 5.  Any entity you are required in a written contract to name as an insured, is an additional insured (hereinafter called Additional Insured). . . .

43.     KB Home's subcontract with Robinson required that KB Home be named as an Additional Insured.

### D.     <u>The Old Dominion Policies</u>

44.     Upon information and belief, American Lathing purchased at least two CGL policies from Old Dominion providing ongoing and products-completed operations coverage for liability because of property damage resulting from American Lathing's work (the "Old Dominion American Lathing Policies").  The Old Dominion American Lathing Policies are listed in **Exhibit 1** and attached as **Exhibits 12 and 13**.  For each annual period, the Old Dominion American Lathing Policies provide $1 million in per occurrence limits, $2 million in aggregate limits, and $2 million in aggregate limits for products-completed operations.

45.     Upon information and belief, Pedel purchased at least eight CGL policies from Old Dominion providing ongoing and products-completed operations coverage for liability because of property damage resulting from Pedel's work (the "Old Dominion Pedel Policies").  The Old Dominion Pedel Policies are listed in **Exhibit 1** and attached as **Exhibits 14 through 21**.  For each annual

period, the Old Dominion Pedel Policies provide $1 million in per occurrence limits, $2 million in aggregate limits, and $2 million in aggregate limits for products-completed operations.

46.     The insuring agreements of both the Old Dominion American Lathing Policies and the Old Dominion Pedel Policies state, in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies.  We will have the right and the duty to defend the insured against any "suit" seeking those damages . . . .

47.     The Old Dominion American Lathing Policies and the Old Dominion Pedel Policies define "property damage" to include:

> a.  Physical injury to tangible property, including all resulting loss of use of that property . . . . or
>
> b.  Loss of use of tangible property that is not physically injured . . . .

48.     For coverage to be afforded, "property damage" must be caused by an "occurrence," which is defined under the Old Dominion American Lathing Policies and the Old Dominion Pedel Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

49.     The Additional Insured – Owners, Lessees or Contractors Including Completed Operations Endorsements in the Old Dominion American Lathing and the Old Dominion Pedel Policies state, in relevant part:

> The following is added to Paragraph C. Who Is An Insured in the Businessowners Liability Coverage Form:

4. Any person(s) or organization(s) shown in the Schedule is also an additional insured, but only with respect to liability for . . . "property damage" . . . caused in whole or part, by:

    a.  Your acts or omissions; or

    b.  The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations or "your work" included within the "products-completed operations" hazard . . . .

50.    The Additional Insured Schedules in the Old Dominion American Lathing Policies and the Old Dominion Pedel Policies identify KB Home.

### E.    The Southern-Owners Policies

51.    Upon information and belief, CMP purchased at least eight CGL policies from Southern-Owners providing ongoing and products-completed operations coverage for liability because of property damage resulting from CMP's work (the "Southern-Owners CMP Policies").  The Southern-Owners CMP Policies are listed in **Exhibit 1** and attached as **Exhibits 22 to 29**.  For each annual period, the Southern-Owners Policies provide $1 million in per occurrence limits, $2 million in general aggregate limits, and $4 million in aggregate limits for products-completed operations.

52.    Upon information and belief, Robinson purchased at least four CGL policies from Southern-Owners providing ongoing and products-completed operations coverage for liability because of property damage resulting from CMP's work (the "Southern-Owners CMP Policies").  The Southern-Owners CMP Policies are listed in **Exhibit 1** and attached as **Exhibits 30 to 33**.  For each annual

period, the Southern-Owners Policies provide $1 million in per occurrence limits, $2 million in general aggregate limits, and $4 million in aggregate limits for products-completed operations.

53.    Upon information and belief, Turnkey purchased at least one CGL policy from Southern-Owners providing ongoing and products-completed operations coverage for liability because of property damage resulting from Turnkey's work (the "Southern-Owners Turnkey Policy").  The Southern-Owners Turnkey Policy is listed in **Exhibit 1** and attached as **Exhibit 35**.  The Southern-Owners Turnkey Policy provides $1 million in per occurrence limits, $2 million in general aggregate limits, and $4 million in aggregate limits for products-completed operations.

54.    The insuring agreements of the Southern-Owners CMP Policies, the Southern-Owners Robinson Policies, and the Southern-Owners Turnkey Policy state, in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies.  We will have the right and the duty to defend the insured against any "suit" seeking those damages . . . .

55.    The Southern-Owners CMP Policies, the Southern-Owners Robinson Policies, and the Southern-Owners Turnkey Policy  define "property damage" to include:

> a. Physical injury to tangible property, including all resulting loss of use of that property . . . . or

> b. Loss of use of tangible property that is not physically injured . . . .

56.    For coverage to be afforded, "property damage" must be caused by an "occurrence," which is defined under the Southern-Owners CMP Policies, the Southern-Owners Robinson Policies, and the Southern-Owners Turnkey Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

57.    The Blanket Additional Insured Endorsements in the Southern-Owners CMP Policies, the Southern-Owners Robinson Policies, and the Southern-Owners Turnkey Policy state, in relevant part:

> Under SECTION II – WHO IS AN INSURED, the following is added:
>
> A person or organization is an Additional Insured, only with respect to liability arising out of "your work" for that Additional Insured by or for you:
>
> 1.  If required in a written contract or agreement . . . .

58.    KB Home's subcontracts with CMP, Robinson, and Turnkey each required that KB Home be named as an Additional Insured.

## III.    THE VILLAGES OF BARTRAM SPRINGS LAWSUIT

59.    The Association filed a Complaint (the "Association Complaint") in the Villages of Bartram Springs Lawsuit on or about September 27, 2019.  A copy of the Association Complaint is attached as **Exhibit 36**.

60.    The Association Complaint alleges, among other things, that in constructing the Project, KB Home is liable for the work of its trades and as such,

both KB Home and the Subcontractors, violated the Florida State Building Code and acted negligently by improperly installing and/or installing defective: stucco; housewrap and flashing; exterior paint, caulk and sealants; structural framing and shear walls; and roofs, resulting in the alleged defects and deficiencies as identified in the Association Complaint.

61.     The Association Complaint further alleges that:

> The aggregate effect of the defects...[resulting from the alleged Building Code violations and negligence] "has caused, and will continue to cause, community-wide water-intrusion damage to other components of the roofs, walls, and structural framing, and other components of the building including, but not limited to the building exteriors, building framing, building lath, house wrap, building sheathing and framing, interior and exterior finishes, drywall, paint, insulation, and other components of the Subject Property and common areas; damages to other property; damage to work of other trades; and undue risk of future damages throughout the Subject Property. Moreover, the defects alleged here in [sic] have caused, and will continue to cause, loss of use to the Association and its members.

## IV.   KB HOME'S DEMANDS FOR A DEFENSE

62.     On or about November 21, 2019, KB Home tendered notice to Lloyds as an Additional Insured under the Lloyds Policy and demanded a defense against the Association's claims.  Upon information and belief, it was received by Lloyds, but Lloyds has failed and/or refused to provide a defense.

63.     On or about July 31, 2019, KB Home tendered notice to First Specialty as an Additional Insured under the First Specialty Policy and demanded a defense

against the Association's claims.  Upon information and belief, it was received by First Specialty, but First Specialty has failed and/or refused to provide a defense.

64.    On or about July 22, 2019, KB Home tendered to North Pointe as an additional insured under the North Pointe Policy and demanded a defense against the Association's claims.  Upon information and belief, it was received by North Pointe, but North Pointe has failed and/or refused to provide a defense.

65.    On or about July 22, 2019, KB Home tendered to Old Dominion as an additional insured under the Old Dominion American Lathing Policies and demanded a defense against the Association's claims.  Upon information and belief, it was received by Old Dominion, but Old Dominion has failed and/or refused to provide a defense.

66.    On or about July 22, 2019, KB Home tendered to Old Dominion as an additional insured under the Old Dominion Pedel Policies and demanded a defense against the Association's claims.  Upon information and belief, it was received by Old Dominion, but Old Dominion has failed and/or refused to provide a defense.

67.    On or about July 7, 2020, KB Home tendered to Southern-Owners as an additional insured under the Southern-Owners CMP Policy and demanded a defense against the Association's claims.  Upon information and belief, it was received by Southern-Owners, but Southern-Owners has failed and/or refused to provide a defense.

68.     On or about July 31, 2019, KB Home tendered to Southern-Owners as an additional insured under the Southern-Owners Turnkey Policy and demanded a defense against the Association's claims.  Upon information and belief, it was received by Southern-Owners, but Southern-Owners has failed and/or refused to provide a defense.

69.     On or about July 31, 2020, KB Home tendered to Southern-Owners as an additional insured under the Southern-Owners Robinson Policy and demanded a defense against the Association's claims.  Upon information and belief, it was received by Southern-Owners, but Southern-Owners has failed and/or refused to provide a defense.

## COUNT I
## DECLARATORY JUDGMENT AGAINST LLOYDS

70.     KB Home re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 7, 12 through 17, 23 through 29, and 59 through 62, as if fully set forth herein.

71.     Upon information and belief, Lloyds disputes one or more of the allegations herein, including, without limitation, the allegation that Lloyds owes a duty to defend KB Home as an Additional Insured in connection with the Villages of Bartram Springs Lawsuit.

72.     By reason of the foregoing, an actual and justiciable controversy exists between KB Home and Lloyds regarding their respective rights and obligations under the Lloyds Policy, including, but not limited to, Lloyds's obligation to defend

KB Home as an Additional Insured in connection with the Villages of Bartram Springs Lawsuit.

73.   An order from this Court will resolve these disputes between the parties concerning their respective rights and obligations.

74.   KB Home is entitled to a declaratory judgment, *inter alia*, that:

(a) Lloyds's duty to defend KB Home was triggered by the Association Complaint in the Villages of Bartram Springs Lawsuit;

(b) Lloyds has a personal and indivisible obligation to provide a defense to KB Home in the Villages of Bartram Springs Lawsuit;

(c) Lloyds is jointly and severally liable for all defense costs incurred by KB Home in connection with the Villages of Bartram Springs Lawsuit;

(d) Lloyds is obligated to reimburse KB Home for all attorneys' fees and other litigation costs incurred in connection with its defense of the Villages of Bartram Springs Lawsuit from the earliest date on which Lloyds was notified of the Villages of Bartram Springs Lawsuit; and

(e) Lloyds owes a present duty to defend KB Home in connection with the Villages of Bartram Springs Lawsuit.

**WHEREFORE**, KB Home respectfully requests that the Court enter judgment against Lloyds awarding KB Home the relief outlined above, together with prejudgment interest, attorneys' fees pursuant to Florida Statutes, Sections

627.428 and/or 626.9373, costs, and such other and further relief as the Court may deem just and proper, including, without limitation, incidental and consequential damages.

## COUNT II
## BREACH OF DUTY TO DEFEND AGAINST LLOYDS

75.     KB Home re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 7, 12 through 17, 23 through 29, and 59 through 62, as if fully set forth herein.

76.     The Lloyds Policy is written contract of insurance obligating Lloyds to defend KB Home, as an Additional Insured, against any suit seeking damages because of property damage that takes place during the policy period and is caused by an occurrence.  Lloyds's contractual duty to defend is separate and apart from its duty to indemnify and is triggered if there is any potential for coverage.

77.     The Association Complaint in the Villages of Bartram Springs Lawsuit alleges facts that create the potential for coverage under the Lloyds Policy, thereby triggering Lloyds's duty to defend.

78.     Lloyds has a personal and indivisible obligation to provide KB Home, as its Additional Insured, with a defense in the Villages of Bartram Springs Lawsuit.  Lloyds is jointly and severally liable for all defense costs incurred by KB Home in connection with the Villages of Bartram Springs Lawsuit.

79.     Lloyds has breached its duty to defend KB Home under the Lloyds Policy by refusing to defend KB Home in the Villages of Bartram Springs Lawsuit.

21

80.    As a direct and proximate result of Lloyds's breach of its duty to defend, KB Home has suffered damages, including, but not limited to, attorneys' fees and other costs KB Home has been forced to incur to defend itself in the Villages of Bartram Springs Lawsuit.  These damages are continuing in nature.

**WHEREFORE**, KB Home respectfully requests that the Court enter judgment against Lloyds awarding KB Home compensatory damages directly and proximately caused by Lloyds's breach of its contractual duty to defend KB Home, together with prejudgment interest, attorneys' fees pursuant to Florida Statutes, Sections 627.428 and/or 626.9373, costs, and such other and further relief as the Court may deem just and proper, including, without limitation, incidental and consequential damages.

## COUNT III
## DECLARATORY JUDGMENT AGAINST FIRST SPECIALTY

81.    KB Home re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 6, 8, 12 through 16, 18, 23, 30 through 36, 59 through 61, and 63, as if fully set forth herein.

82.    Upon information and belief, First Specialty disputes one or more of the allegations herein, including, without limitation, the allegation that First Specialty owes a duty to defend KB Home as an Additional Insured in connection with the Villages of Bartram Springs Lawsuit.

83.    By reason of the foregoing, an actual and justiciable controversy exists between KB Home and First Specialty regarding their respective rights and obligations under the First Specialty Policy, including, but not limited to, First

Specialty's obligation to defend KB Home as an Additional Insured in connection with the Villages of Bartram Springs Lawsuit.

84. An order from this Court will resolve these disputes between the parties concerning their respective rights and obligations.

85. KB Home is entitled to a declaratory judgment, *inter alia*, that:

(a) First Specialty's duty to defend KB Home was triggered by the Association Complaint in the Villages of Bartram Springs Lawsuit;

(b) First Specialty has a personal and indivisible obligation to provide a defense to KB Home in the Villages of Bartram Springs Lawsuit;

(c) First Specialty is jointly and severally liable for all defense costs incurred by KB Home in connection with the Villages of Bartram Springs Lawsuit;

(d) First Specialty is obligated to reimburse KB Home for all attorneys' fees and other litigation costs incurred in connection with its defense of the Villages of Bartram Springs Lawsuit from the earliest date on which First Specialty was notified of the Villages of Bartram Springs Lawsuit; and

(e) First Specialty owes a present duty to defend KB Home in connection with the Villages of Bartram Springs Lawsuit.

**WHEREFORE**, KB Home respectfully requests that the Court enter judgment against First Specialty awarding KB Home the relief outlined above, together with prejudgment interest, attorneys' fees pursuant to Florida Statutes,

Sections 627.428 and/or 626.9373, costs, and such other and further relief as the Court may deem just and proper, including, without limitation, incidental and consequential damages.

## COUNT IV
## BREACH OF DUTY TO DEFEND AGAINST FIRST SPECIALTY

86.     KB Home re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 6, 8, 12 through 16, 18, 23, 30 through 36, 59 through 61, and 63, as if fully set forth herein.

87.     The First Specialty Policy is a written contract of insurance obligating First Specialty to defend KB Home, as an Additional Insured, against any suit seeking damages because of property damage that takes place during the policy period and is caused by an occurrence.  First Specialty's contractual duty to defend is separate and apart from its duty to indemnify and is triggered if there is any potential for coverage.

88.     The Association Complaint in the Villages of Bartram Springs Lawsuit alleges facts that create the potential for coverage under the First Specialty Policy, thereby triggering First Specialty's duty to defend.

89.     First Specialty has a personal and indivisible obligation to provide KB Home, as its Additional Insured, with a defense in the Villages of Bartram Springs Lawsuit.  First Specialty is jointly and severally liable for all defense costs incurred by KB Home in connection with the Villages of Bartram Springs Lawsuit.

90.     First Specialty has breached its duty to defend KB Home under the First Specialty Policy by refusing to defend KB Home in the Villages of Bartram Springs Lawsuit.

91.     As a direct and proximate result of First Specialty's breach of its duty to defend, KB Home has suffered damages, including, but not limited to, attorneys' fees and other costs KB Home has been forced to incur to defend itself in the Villages of Bartram Springs Lawsuit.  These damages are continuing in nature.

**WHEREFORE**, KB Home respectfully requests that the Court enter judgment against First Specialty awarding KB Home compensatory damages directly and proximately caused by First Specialty's breach of its contractual duty to defend KB Home, together with prejudgment interest, attorneys' fees pursuant to Florida Statutes, Sections 627.428 and/or 626.9373, costs, and such other and further relief as the Court may deem just and proper, including, without limitation, incidental and consequential damages.

## COUNT V
## DECLARATORY JUDGMENT AGAINST NORTH POINTE

92.     KB Home re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 6, 9, 12 through 16, 21, 24, 37 through 43, 59 through 61, and 64 as if fully set forth herein.

93.     Upon information and belief, North Pointe disputes one or more of the allegations herein, including, without limitation, the allegation that North Pointe owes a duty to defend KB Home as an Additional Insured in connection with the Villages of Bartram Springs Lawsuit.

94.   By reason of the foregoing, an actual and justiciable controversy exists between KB Home and North Pointe regarding their respective rights and obligations under the North Pointe Policies, including, but not limited to, North Pointe's obligation to defend KB Home as an Additional Insured in connection with the Villages of Bartram Springs Lawsuit.

95.   An order from this Court will resolve these disputes between the parties concerning their respective rights and obligations.

96.   KB Home is entitled to a declaratory judgment, *inter alia*, that:

(a) North Pointe's duty to defend KB Home was triggered by the Association Complaint in the Villages of Bartram Springs Lawsuit;

(b) North Pointe has a personal and indivisible obligation to provide a defense to KB Home in the Villages of Bartram Springs Lawsuit;

(c) North Pointe is jointly and severally liable for all defense costs incurred by KB Home in connection with the Villages of Bartram Springs Lawsuit;

(d) North Pointe is obligated to reimburse KB Home for all attorneys' fees and other litigation costs incurred in connection with its defense of the Villages of Bartram Springs Lawsuit from the earliest date on which North Pointe was notified of the Villages of Bartram Springs Lawsuit; and

(e) North Pointe owes a present duty to defend KB Home in connection with the Villages of Bartram Springs Lawsuit.

**WHEREFORE**, KB Home respectfully requests that the Court enter judgment against North Pointe awarding KB Home the relief outlined above, together with prejudgment interest, attorneys' fees pursuant to Florida Statutes, Sections 627.428 and/or 626.9373, costs, and such other and further relief as the Court may deem just and proper, including, without limitation, incidental and consequential damages.

**COUNT VI**
**BREACH OF DUTY TO DEFEND AGAINST NORTH POINTE**

97.    KB Home re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 6, 9, 12 through 16, 21, 24, 37 through 43, 59 through 61, and 64 as if fully set forth herein.

98.    The North Pointe Policies are written contracts of insurance obligating North Pointe to defend KB Home, as an Additional Insured, against any suit seeking damages because of property damage that takes place during the policy period and is caused by an occurrence.  North Pointe's contractual duty to defend is separate and apart from its duty to indemnify and is triggered if there is any potential for coverage.

99.    The Association Complaint in the Villages of Bartram Springs Lawsuit alleges facts that create the potential for coverage under the North Pointe Policies, thereby triggering North Pointe's duty to defend.

100.   North Pointe has a personal and indivisible obligation to provide KB Home, as its Additional Insured, with a defense in the Villages of Bartram Springs

27

Lawsuit.  North Pointe is jointly and severally liable for all defense costs incurred by KB Home in connection with the Villages of Bartram Springs Lawsuit.

101.   North Pointe has breached its duty to defend KB Home under the North Pointe Policies by refusing to defend KB Home in the Villages of Bartram Springs Lawsuit.

102.   As a direct and proximate result of North Pointe's breach of its duty to defend, KB Home has suffered damages, including, but not limited to, attorneys' fees and other costs KB Home has been forced to incur to defend itself in the Villages of Bartram Springs Lawsuit.  These damages are continuing in nature.

**WHEREFORE**, KB Home respectfully requests that the Court enter judgment against North Pointe awarding KB Home compensatory damages directly and proximately caused by North Pointe's breach of its contractual duty to defend KB Home, together with prejudgment interest, attorneys' fees pursuant to Florida Statutes, Sections 627.428 and/or 626.9373, costs, and such other and further relief as the Court may deem just and proper, including, without limitation, incidental and consequential damages.

## COUNT VII
## DECLARATORY JUDGMENT AGAINST OLD DOMINION

103.   KB Home re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 6, 10, 12 through 17, 20, 23, 44 through 50, 59 through 61, 65 and 66, as if fully set forth herein.

104.   Upon information and belief, Old Dominion disputes one or more of the allegations herein, including, without limitation, the allegation that Old

28

Dominion owes a duty to defend KB Home as an Additional Insured in connection with the Villages of Bartram Springs Lawsuit.

105.   By reason of the foregoing, an actual and justiciable controversy exists between KB Home and Old Dominion regarding their respective rights and obligations under the Old Dominion American Lathing Policies and the Old Dominion Pedel Policies, including, but not limited to, Old Dominion's obligation to defend KB Home as an Additional Insured in connection with the Villages of Bartram Springs Lawsuit.

106.   An order from this Court will resolve these disputes between the parties concerning their respective rights and obligations.

107.   KB Home is entitled to a declaratory judgment, *inter alia*, that:

(a) Old Dominion's duty to defend KB Home was triggered by the Association Complaint in the Villages of Bartram Springs Lawsuit;

(b) Old Dominion has a personal and indivisible obligation to provide a defense to KB Home in the Villages of Bartram Springs Lawsuit;

(c) Old Dominion is jointly and severally liable for all defense costs incurred by KB Home in connection with the Villages of Bartram Springs Lawsuit;

(d) Old Dominion is obligated to reimburse KB Home for all attorneys' fees and other litigation costs incurred in connection with its defense of the Villages of Bartram Springs Lawsuit from the

earliest date on which Old Dominion was notified of the Villages of Bartram Springs Lawsuit; and

(e) Old Dominion owes a present duty to defend KB Home in connection with the Villages of Bartram Springs Lawsuit.

**WHEREFORE**, KB Home respectfully requests that the Court enter judgment against Old Dominion awarding KB Home the relief outlined above, together with prejudgment interest, attorneys' fees pursuant to Florida Statutes, Sections 627.428 and/or 626.9373, costs, and such other and further relief as the Court may deem just and proper, including, without limitation, incidental and consequential damages.

### COUNT VIII
### BREACH OF DUTY TO DEFEND AGAINST OLD DOMINION

108.   KB Home re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 6, 10, 12 through 17, 20, 23, 44 through 50, 59 through 61, 65 and 66, as if fully set forth herein.

109.   The Old Dominion American Lathing Policies and the Old Dominion Pedel Policies are written contracts of insurance obligating Old Dominion to defend KB Home, as an Additional Insured, against any suit seeking damages because of property damage that takes place during the policy period and is caused by an occurrence.  Old Dominion's contractual duty to defend is separate and apart from its duty to indemnify and is triggered if there is any potential for coverage.

110.   The Association Complaint in the Villages of Bartram Springs Lawsuit alleges facts that create the potential for coverage under the Old Dominion

American Lathing Policies and the Old Dominion Pedel Policies, thereby triggering Old Dominion's duty to defend.

111.    Old Dominion has a personal and indivisible obligation to provide KB Home, as its Additional Insured, with a defense in the Villages of Bartram Springs Lawsuit.  Old Dominion is jointly and severally liable for all defense costs incurred by KB Home in connection with the Villages of Bartram Springs Lawsuit.

112.    Old Dominion has breached its duty to defend KB Home under the Old Dominion American Lathing Policies and the Old Dominion Pedel Policies by refusing to defend KB Home in the Villages of Bartram Springs Lawsuit.

113.    As a direct and proximate result of Old Dominion's breach of its duty to defend, KB Home has suffered damages, including, but not limited to, attorneys' fees and other costs KB Home has been forced to incur to defend itself in the Villages of Bartram Springs Lawsuit.  These damages are continuing in nature.

**WHEREFORE**, KB Home respectfully requests that the Court enter judgment against Old Dominion awarding KB Home compensatory damages directly and proximately caused by Old Dominion's breach of its contractual duty to defend KB Home, together with prejudgment interest, attorneys' fees pursuant to Florida Statutes, Sections 627.428 and/or 626.9373, costs, and such other and further relief as the Court may deem just and proper, including, without limitation, incidental and consequential damages.

## COUNT IX
## DECLARATORY JUDGMENT AGAINST SOUTHERN-OWNERS

114.     KB Home re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 6, 11 through 16, 19, 21 through 23, 51 through 61 and  67 through 69, as if fully set forth herein.

115.     Upon information and belief, Southern-Owners disputes one or more of the allegations herein, including, without limitation, the allegation that Southern-Owners owes a duty to defend KB Home as an Additional Insured in connection with the Villages of Bartram Springs Lawsuit.

116.     By reason of the foregoing, an actual and justiciable controversy exists between KB Home and Southern-Owners regarding their respective rights and obligations under the Southern-Owners CMP Policies, Southern-Owners Robinson Policies, and Southern-Owners Turnkey Policy including, but not limited to, Southern-Owners' obligation to defend KB Home as an Additional Insured in connection with the Villages of Bartram Springs Lawsuit.

117.     An order from this Court will resolve these disputes between the parties concerning their respective rights and obligations.

118.     KB Home is entitled to a declaratory judgment, *inter alia*, that:

    (a) Southern-Owners' duty to defend KB Home was triggered by the Association Complaint in the Villages of Bartram Springs Lawsuit;

    (b) Southern-Owners has a personal and indivisible obligation to provide a defense to KB Home in the Villages of Bartram Springs Lawsuit;

(c) Southern-Owners is jointly and severally liable for all defense costs incurred by KB Home in connection with the Villages of Bartram Springs Lawsuit;

(d) Southern-Owners is obligated to reimburse KB Home for all attorneys' fees and other litigation costs incurred in connection with its defense of the Villages of Bartram Springs Lawsuit from the earliest date on which Southern-Owners was notified of the Villages of Bartram Springs Lawsuit; and

(e) Southern-Owners owes a present duty to defend KB Home in connection with the Villages of Bartram Springs Lawsuit.

**WHEREFORE**, KB Home respectfully requests that the Court enter judgment against Southern-Owners awarding KB Home the relief outlined above, together with prejudgment interest, attorneys' fees pursuant to Florida Statutes, Sections 627.428 and/or 626.9373, costs, and such other and further relief as the Court may deem just and proper, including, without limitation, incidental and consequential damages.

## COUNT X
## BREACH OF DUTY TO DEFEND AGAINST SOUTHERN-OWNERS

119.   KB Home re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 6, 11 through 16, 19, 21 through 23, 51 through 61 and 67 through 69, as if fully set forth herein.

120.   The Southern-Owners CMP Policies, Southern-Owners Robinson Policies, and Southern-Owners Turnkey Policy are written contracts of insurance

obligating Southern-Owners to defend KB Home, as an Additional Insured, against any suit seeking damages because of property damage that takes place during the policy period and is caused by an occurrence.  Southern-Owners' contractual duty to defend is separate and apart from its duty to indemnify and is triggered if there is any potential for coverage.

121.   The Association Complaint in the Villages of Bartram Springs Lawsuit alleges facts that create the potential for coverage under the Southern-Owners CMP Policies, Southern-Owners Robinson Policies, and Southern-Owners Turnkey Policy, thereby triggering Southern-Owners' duty to defend.

122.   Southern-Owners has a personal and indivisible obligation to provide KB Home, as its Additional Insured, with a defense in the Villages of Bartram Springs Lawsuit.  Southern-Owners is jointly and severally liable for all defense costs incurred by KB Home in connection with the Villages of Bartram Springs Lawsuit.

123.   Southern-Owners has breached its duty to defend KB Home under the Southern-Owners Policies by refusing to defend KB Home in the Villages of Bartram Springs Lawsuit.

124.   As a direct and proximate result of Southern-Owners' breach of its duty to defend, KB Home has suffered damages, including, but not limited to, attorneys' fees and other costs KB Home has been forced to incur to defend itself in the Villages of Bartram Springs Lawsuit.  These damages are continuing in nature.

**WHEREFORE**, KB Home respectfully requests that the Court enter judgment against Southern-Owners awarding KB Home compensatory damages directly and proximately caused by Southern-Owners' breach of its contractual duty to defend KB Home, together with prejudgment interest, attorneys' fees pursuant to Florida Statutes, Sections 627.428 and/or 626.9373, costs, and such other and further relief as the Court may deem just and proper, including, without limitation, incidental and consequential damages.

Dated:  April 16, 2021

Respectfully submitted,

/s Matthew R. Cogburn
Matthew R. Cogburn (Florida Bar No. 0288100)
COGBURN LAW FIRM, P.A.
515 West Bay Street, Suite 210
Tampa, FL 33606
Telephone:  813-250-3444
mcogburn@cogburnlegal.com

Attorney for KB HOME Jacksonville LLC